## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

|  |  |
|---|---|
| GLENWOOD SPRINGS CITIZENS' ALLIANCE, | Case No: 24-445 |
| Plaintiff, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FREEDOM OF INFORMATION ACT |
| vs. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR; U.S. BUREAU OF LAND MANAGEMENT, | |
| Defendants. | |

## <u>INTRODUCTION</u>

1.     Plaintiff, Glenwood Springs Citizens' Alliance ("GSCA"), files this suit for declaratory and injunctive relief under the Freedom of Information Act, 5 U.S.C. §552, *et seq*. ("FOIA").

2.     Beginning in 2018, GSCA filed three written requests under FOIA (in 2018, 2019, and 2022).  Each FOIA Request described and sought prompt access to agency records from the Federal Defendants, U.S. Bureau of Land Management ("BLM") and the Department of the Interior ("DOI"), including agency records related to the ongoing mining operations, and proposed major expansion of, a large limestone mine directly above Glenwood Springs, CO, known as the Mid-Continent Mine.  Each time, in response to these FOIA requests, BLM/DOI refused to provide all of the requested agency records.  Many of the agency records that BLM/DOI did produce were so heavily redacted as to make them essentially meaningless and unreadable.

3.     In response to GSCA's 2022 FOIA request, BLM refused to provide critical agency records regarding the mine – despite the fact that BLM had produced essentially the

same agency records in response to GSCA's 2018 and 2019 FOIA requests. Defendants never offered any reason or support for this abrupt change, as the agency simply redacted (blacked-out) entire sets of documents.

4.     GSCA was thus obligated to file formal appeals, in 2020, 2021, and 2023, to DOI's FOIA Office in Washington, D.C., detailing how BLM/DOI's refusals and blanket redactions violated FOIA.  As of the date of this filing, GSCA has not received DOI's FOIA Office's determination on any of these administrative appeals.

5.     The DOI FOIA Office no longer has jurisdiction to resolve the administrative appeals.

6.     Defendants' failure to respond to each administrative appeal in accordance with FOIA deadlines serves as a constructive exhaustion of all administrative remedies. GSCA has exhausted its administrative remedies.  GSCA properly requests judicial review, oversight, and relief to ensure prompt access to all agency records responsive to the FOIA requests and that are not subject to a fully-justified FOIA Exemption.

## STATEMENT OF FACTS

**The Glenwood Springs Mine and the Importance of the Withheld Documents**

7.     The Glenwood Springs Mine, also known as the Mid-Continent Quarry ("Quarry" or "Mine") currently operates on BLM-managed federal public land immediately above residential neighborhoods in Glenwood Springs.

8.     The Mine covers a large mined and excavated area, as well as a production/processing plant, and various access and internal roads.

9.     BLM initially authorized mining operations based on a mining Plan of Operations ("PoO") submitted by a previous owner and approved by BLM in 1982, as amended in 1989.  The current owner and operator of the Mine, Rocky Mountain Industrials ("RMI") (also known as RMI Aggregates, and previously known as Rocky Mountain Resources, "RMR") purchased the mining claims covering the Mine in October 2016

and has been conducting mining operations on federal public lands since then based
on that 1982/89 authorization.

10.    The 1982/89 authorization to mine the federal public lands was for "locatable"
minerals governed under the 1872 Mining Law, 30 U.S.C. §§21 *et seq.* The 1982/89
PoO approval never authorized the mining of "common variety" minerals, which are
governed by completely different regulatory regimes under the 1947 Materials Act,
30 U.S.C. §§601-604, and the 1955 Common Varieties Act, 30 U.S.C. §611. BLM's
review and approval of the 1982/89 PoO was done pursuant to BLM's "locatable"
minerals regulations at 43 CFR Part 3809, which do not regulate or approve the
removal/sale of minerals from federal public lands when such minerals are to be used
for common variety purposes.

11.    Limestone sold for common construction and similar uses, such as for road base, rip-
rap, and general fill, is considered a "common variety" mineral, not covered by a
claimant's rights to mine federal public lands under the 1872 Law or the 1982/89
approval. *See* Copar Pumice Co. v. Tidwell, 603 F.3d 780, 785-86 (10th Cir. 2010).
"[I]t is the end use of the [mineral] that is determinative of whether the mineral is
uncommon and thus locatable." United States v. Armstrong, 184 IBLA [Interior
Board of Land Appeals] 180, 196 (2013), 2013 WL 6631451, **13.

12.    Under federal mining and public land laws, RMI may not mine, remove, or sell
"common variety" minerals from its mining claim(s) on federal public lands, without
specific approval for such mining/removal/sale under BLM's common variety
regulations (43 C.F.R. Part 3600), and pursuant to a Mineral Materials Sale Contract
under those regulations.[1]

---

[1] There are major differences in the federal legal framework governing "common
varieties" versus "locatable minerals." Under the 1947 and 1955 Acts, BLM can only
authorize mining/sale of common variety minerals if the operation is not "detrimental to
the public interest," and fully "protect[s] public land resources and the environment and

13.     The information sought in the FOIA requests is based on FOIA's basic purpose, which "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." Anderson v. Health & Human Servs., 907 F.2d 936, 941 (10th Cir. 1990).

14.     BLM/DOI FOIA decisions to delay and deny access to agency records responsive to the FOIA request violate FOIA and defeat GSCA's legally protected interests in ensuring compliance with federal law in BLM/DOI's oversight of mining on federal public lands. See Cameron v. United States, 252 U.S. 450, 460 (1920) (stating that "no right arises from an invalid [mining] claim of any kind" because the contrary holding would "work an unlawful private appropriation in derogation of the rights of the public").

15.     Despite the years of growing evidence before BLM showing that RMI has mined/removed/sold common variety rock and stone since at least 2016 (when RMI purchased the mining claims at the Mine), BLM continued to allow RMI to conduct mining operations on federal public lands, unabated and without subjecting such operations to the proper regulatory controls.

---

minimize[s] damage to public health and safety during the exploration for and removal of such minerals." 43 C.F.R. §3601.6. The removal/sale of common variety minerals from federal public lands can only occur pursuant to a Mineral Materials Sale Contract, where BLM receives fair market value for all materials. BLM has complete discretion to deny the removal/sale of common variety minerals. Id. In stark contrast, the mining of "locatable" minerals qualifying as "valuable mineral deposits" is governed by the 1872 Mining Law, which does not contain any "public interest" requirement, where the claimant pays no royalties to the federal government, and where BLM's discretion to reject a mine plan involving federal public lands is much more limited.

4

16.     GSCA and the Glenwood Springs community first became aware of the serious
        problems at the Mine when RMI/RMR announced its proposal in 2018 to expand the
        Mine from its current roughly 15 permitted acres to over 400 permitted acres.

17.     In order to inform its members and the Glenwood Springs community of the Mine's
        operations, and BLM's oversight of the Mine, including the critical issues
        surrounding RMI's mining of common variety minerals in violation of federal mining
        laws, GSCA filed three separate FOIA requests which are the subject of this lawsuit:
        (1) June 12, 2018; (2) November 8, 2019, and (3) November 2, 2022.

18.     Based on GSCA's investigations, and due in part to documents obtained from BLM
        in response to GSCA's FOIA requests in 2018 and 2019, it became clear that RMI
        was mining and selling large tonnages of limestone for common variety uses in
        violation of the 1982/89 PoO approval and federal law.

19.     In response to these FOIA requests, the Defendants provided some responsive agency
        records, but withheld or redacted hundreds of pages by citing various FOIA
        exemptions.  GSCA timely filed administrative appeals of each of these agency
        responses, asserting among other FOIA violations, that the agency failed to produce
        the requested agency records, and that the agency's repeated invocation of FOIA's
        exemptions from disclosure were unsupported and against controlling caselaw.  To
        date, the Defendants have failed to respond to these appeals.

20.     As BLM became aware of the mounting evidence that the Mine was producing and
        selling minerals for road base, rip-rap, fill, and other common variety end uses, BLM
        and others questioned whether the original 1982/89 PoO approval was still valid.

21.     Beginning in 2004, in order to determine whether the minerals were being sold for
        common variety purposes, BLM informed the previous owners, including CalX
        Minerals, Inc., as a condition of continued operations, that they would have to submit

to BLM the contracts and related records documenting the sales and end users of the
sold minerals.

22.    For example, in an October 19, 2012 letter to CalX Minerals, BLM required that
"CalX will supply the BLM with monthly sales information" to verify that the
removed/sold minerals were not being used for common variety purposes.  CalX
continued to provide those sales reports to BLM.  Each sales report that was obtained
by BLM is an agency record subject to FOIA.

23.    RMI/RMR purchased the mining claims at the Mine from CalX in October 2016.  At
that time, BLM reiterated to RMI/RMR that it was required to continue providing
monthly sales reports, just as CalX had been required to do.

24.    Despite the established practice of BLM obtaining these sales reports documenting
the sales of minerals for common variety purposes as part of BLM's federal land
management duties, BLM never determined whether the mined minerals were indeed
common variety minerals.  Instead, BLM has allowed RMI to excavate and sell the
limestone rock for common variety uses, which as BLM previously stated are not
qualifying end uses to be considered a locatable mineral under the 1872 Mining Law
and BLM's mining regulations at 43 C.F.R. Part 3809.

25.    For example, in GSCA's October 11, 2018 letter to BLM, GSCA attached an RMI
document entitled "2018 Rocky Mountain Resources – Mid Continent Quarry Price
Sheet," showing that RMR was producing and selling minerals from the site for
"Road Base," "Structural Fill," "Rip Rap," "Screened Rock," and various types of
"Boulders."

26.    In its response to GSCA's 2018 FOIA request for all documents related to the Mine,
BLM provided RMI's Sales Reports/Receipts from late 2016 to mid-2018, showing
the number of sales, truck loads, and tonnages of the minerals removed and sold from
the site.  In just one month, October 2017, RMI made over 350 separate sales to a

local construction company, for "Roadbase" and "Backfill" (in addition to deliveries to other local construction firms).

27.     The agency records contained mounting and undisputable evidence that RMI was selling the minerals for common variety end uses.  Confronted with the information in these agency records, BLM finally began to take action, requiring that RMI could no longer mine and sell these materials unless it established an agreement with BLM where the fair market value of the proceeds of these common variety sales were placed in an escrow account.

28.     In a March 21, 2019 letter to RMI, BLM stated that as a condition for continued mining, it will "allow operations that are currently authorized to continue, provided that you first establish an escrow account in a form acceptable to BLM and make payments for the in-place value of the materials removed."

29.     GSCA wrote to BLM on February 5, 2020 questioning the legality of BLM's decision to establish the escrow account as the basis for continued mining.  BLM replied by a February 13, 2020 letter that stated, in relevant part, that "BLM did in fact require RMR to establish and pay into an escrow account, which was executed, and payments submitted going back to RMR's November 2018 plan modification submission to expand the Mid-Continent Quarry."

30.     In response to GSCA's second FOIA request submitted in 2019, BLM finally produced, in April 2021, the executed Escrow Agreement between BLM and RMI.

31.     BLM also produced responsive agency records, like it had in response to GSCA's 2018 FOIA, that included additional monthly reports of RMI's sales and end uses, as required by the Escrow Agreement.  These reports and other agency records show that RMI continued to mine and sell rock from the Quarry for common variety construction and similar uses.

32.     For example, as shown in the Escrow Account invoices that BLM provided to GSCA under FOIA, in November 2019 alone, RMI made over 90 deliveries of common rock to local construction firms for common variety uses such as "rip-rap."  The same occurred the following month, where RMI made over 80 deliveries of common rock for construction purposes such as "roadbase."

33.     Faced with BLM's continued approval of the mining and sale of common variety minerals from federal public lands without proper authorization, GSCA filed litigation in this District Court challenging BLM's actions and inactions. Glenwood Springs Citizens' Alliance v. Dept. of the Interior, Civil Action No. 1:20-cv-00658-CNS (D. Colo.) (filed March 10, 2020) (Judge Charlotte N. Sweeney, presiding).  The Board of County Commissioners for Garfield County successfully intervened as plaintiff in the case, raising issues similar to GSCA.

34.     GSCA and Garfield County claimed, among other issues, that BLM had unreasonably delayed the completion of its examination of the minerals and end uses at the Mine, known as its "Determination of Common Variety" ("DCV").

35.     BLM filed a motion to dismiss the lawsuit, but in ruling on BLM's motion, Judge Sweeney concluded that "the Bureau has unreasonably delayed completion of the DCV Investigation" of the mining of common variety minerals at the Glenwood Springs Quarry. Glenwood Springs Citizens' Alliance v. Dept. of the Interior, 2022 WL 16792226, at 11 (November 8, 2022, D. Colo. 2022).  "[F]or the same reason the Bureau's delay has been extensive – it is unreasonable on its face." Id. See also Id. at *13 ("the Bureau has unreasonably delayed in completing its mineral examination").

36.     The parties then briefed the case on the merits in 2023, and are awaiting a ruling from the Court.

37.     On January 25, 2024, BLM notified the Court that the DCV had been completed on January 12, 2024.

38.     GSCA filed a FOIA request to BLM on January 26, 2024 to obtain the DCV.  BLM placed a heavily redacted DCV on its website on January 31, and formally emailed that redacted version to GSCA, with a cover letter, on February 1, 2024.  On February 2, 2024, GSCA filed an administrative appeal of those withholdings and redactions, detailing BLM's continued FOIA violations.  BLM has yet to respond to that new appeal.  At this time, the 2024 FOIA Request and pending Appeal are not part of the present lawsuit.

## JURISDICTION AND VENUE

39.     This Court has jurisdiction over this action pursuant to FOIA, including the power "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

40.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his duty).

41.     In addition, FOIA provides that GSCA may seek judicial review under 5 U.S.C. § 552(a)(4)(B) because Defendants have not made a determination on GSCA's three appeals within the 20-workday time limit set in the FOIA (5 U.S.C. § 552(a)(6)(A)(ii)).

42.     Venue in this Court is proper under 5 U.S.C. § 552(a)(4)(B), which provides venue for FOIA cases in this District.  The records requested by this FOIA Request involve the ongoing regulatory authority of BLM and DOI over federal public lands in Colorado.  Venue is also appropriate under 28 U.S.C. § 1391 because Defendants are agencies of the United States and the offices and officials responsible for the alleged FOIA violations have their offices in Colorado.

43.      This Court has statutory authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  This Court has statutory authority to grant injunctive relief pursuant to 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

44.      This Court retains all equitable powers to remedy FOIA violations. *See* Payne Enters., Inc. v. United States, 837 F.2d 486, 494 (D.C. Cir. 1988) ("FOIA imposes no limits on courts' equitable powers in enforcing its terms.").

45.      This Court has statutory authority to award costs and attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E).

46.      This Court has statutory authority to refer this matter to the Special Counsel to investigate and make binding recommendations to remedy an agency's conduct involving potentially arbitrary and capricious circumstances surrounding the withholding of agency records. 5 U.S.C. § 552(a)(4)(F).

47.      The FOIA claims made in this Complaint are ripe for judicial review.  Harms to GSCA can be remedied by an order of this Court.

## PARTIES

48.      Plaintiff Glenwood Springs Citizens' Alliance (GSCA) is a nonprofit organization based in Glenwood Springs, Colorado that is concerned with protecting the Glenwood Springs area from the adverse impacts of the mining, processing and transport of minerals from the Mine.  GSCA was specifically formed in 2018 to respond to the environmental and economic threats posed by the ongoing operations at the Mine, as well as RMI's proposed expansion of the Mine.  Members of GSCA use, enjoy, and value the lands and resources affected by the Mine, including the public lands and access roads around the Mine.

49.      GSCA members live in close proximity to the Mine and use on a daily basis the roads in Glenwood Springs that all of the Mine's truck traffic utilizes to transport minerals removed from the site.

50.     Although not necessary for a FOIA request, GSCA has particularized interests in the agency records sought by its FOIA requests.  The agency records contain information regarding the Mine's direct and adverse impacts to GSCA's members from the blasting, removal and transport of the minerals from the Mine.  Members of GSCA hike, view and photograph wild plant and animal life, and generally enjoy using the lands around and affected by the Mine for recreational, historical, conservation, and aesthetic purposes.

51.     GSCA uses FOIA as an important tool for gaining information about agency activities.  GSCA is harmed when it is denied agency records to which it is entitled.  GSCA intends to continue its use of FOIA to access agency records in the possession of Defendants.  Specifically, GSCA recently submitted, on January 26, 2024, another FOIA request to the BLM for different records regarding the Mine (the DCV) that BLM only produced in heavily redacted form.  On February 2, 2024, GSCA filed an administrative appeal of those redactions, detailing BLM's continued FOIA violations.

52.     GSCA works in furtherance of its goals in part by acquiring information regarding federal programs and activities through FOIA.  GSCA then compiles and analyzes that information and, subsequently, disseminates that information to its membership, the general public, and public officials through various sources including publications, its website and newsletter, general news media coverage, and public presentations.  GSCA's successful efforts at educating the public and elected officials on issues concerning federal government programs and activities that affect the environment contribute significantly to the public's understanding of such governmental operations and activities.  GSCA also uses the information that it acquires through FOIA to participate in federal decision-making processes, to file

civil actions, and generally to ensure that federal agencies comply with federal
environmental laws.

53.     One of the purposes of FOIA is to promote the public's active oversight role with
        respect to federal agencies' statutory duties under federal law, including the
        Administrative Procedure Act. *See, e.g.*, 5 U.S.C. § 551, *et seq.* GSCA uses FOIA to
        publicize activities of federal agencies and to mobilize the public to participate in the
        management of public land. GSCA intends to continue using FOIA requests to fulfill
        its oversight and advocacy role by scrutinizing agency records, a practice Congress
        intended to promote through the adoption of FOIA.

54.     Any person who files a FOIA request is deemed to have standing to invoke the
        jurisdiction of the federal courts to carry out the judicial review provisions of FOIA.
        GSCA filed the FOIA Requests at issue, and has standing to bring this FOIA suit.
        GSCA brings this action on its own behalf and on behalf of its adversely affected
        members.

55.     GSCA and its members have and will suffer direct injury by the Defendants' failure
        to comply with the statutory requirements of FOIA, and a favorable outcome of this
        litigation will redress that injury. Defendants' refusal to provide timely FOIA access
        to agency records prevents GSCA's informed involvement and to effectively engage
        in BLM's decisions affecting sensitive federal public lands. Harm to the environment
        flows from Defendants' FOIA violations, which conceal the facts and circumstances
        underlying important agency decisions and management activities.

56.     Defendant U.S. BUREAU OF LAND MANAGEMENT (BLM) is an executive
        agency within the Department of the Interior as defined by 5 U.S.C. § 552(f)(1).
        FOIA charges BLM with the duty to provide public access to agency records in its
        possession or control. BLM possesses records responsive to GSCA's three FOIA
        requests in 2018, 2019, and 2022. Through its actions, and failures to act, BLM has

denied GSCA's requests to promptly access agency records, in contravention of federal law. BLM continues to withhold agency records responsive to GSCA's FOIA Requests, in part and in full.

57.     Defendant U.S. DEPARTMENT OF THE INTERIOR (DOI) is an executive department of the United States Government as defined by 5 U.S.C. § 552(f)(1). FOIA charges DOI with the duty to provide public access to agency records in its possession or control. DOI possesses records responsive to GSCA's FOIA Requests that have been withheld in contravention of federal law.

58.     FOIA requires that Defendants, and any component thereof that may possess records requested by GSCA, must conduct an informed search for responsive records that considers information found during the search. Defendants have not conducted a fully informed search. Through various offices, including DOI's Office of the Solicitor, DOI oversees and works with BLM in carrying out statutory duties involving the subject matter of the FOIA Request.

59.     Among other FOIA duties, Defendants failed to lawfully make a full and final determination on GSCA's FOIA Requests within the statutory twenty working day limit. As of the date of this filing, the Defendants possess, control, and are unlawfully withholding agency records responsive to GSCA's FOIA Requests that are not subject to a FOIA Exemption.

60.     Defendants' actions and inactions violate FOIA and deny GSCA's timely access to information to which GSCA is entitled by law, thereby preventing GSCA from fulfilling its organizational mission and objectives. Defendants' actions and inactions prevent GSCA from meaningfully informing its members, supporters, government officials, and the general public regarding mining activities and proposals that involve federal public lands and resources.

61.    Defendants have adopted patterns, practices, and/or policies that have injured, and will continue to injure, GSCA's FOIA-based interest in timely access to public information in agency records which GSCA is entitled by law to access.  GSCA's FOIA-related injuries are properly remedied pursuant to the court's equitable powers.

62.    Defendants' conduct involves potentially arbitrary and capricious circumstances surrounding the withholding of agency records that warrant referral to the Special Counsel for further investigation and remedy.  Congress provided the statutory remedy of Special Counsel referral to ease the burdens on FOIA complainants and the federal courts while ensuring agencies comply with FOIA's open government mandate.

## SUMMARY OF LAW

63.    FOIA's fundamental purpose is to ensure governmental transparency, which is achieved by establishing the public's right to access federal agency records and by imposing specific procedures with firm deadlines. 5 U.S.C. §§ 552(a)(3)(A), (6)(A).

64.    Upon receipt of a request, FOIA requires agencies to issue a "determination" within 20 workdays, absent unusual circumstances, and to make requested records "promptly available" thereafter. 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(A)(i), (a)(6)(B).

65.    Failure to provide the FOIA requester with a timely determination in response to a FOIA request is a violation of FOIA. 5 U.S.C. § 552 (a)(6)(A) (using "shall" to set out FOIA duties).

66.    FOIA also requires agencies to provide "an estimated date on which the agency will complete action on the request" for requests that require "longer than ten days to process." 5 U.S.C. § 552(a)(7).

67.    FOIA requires federal agencies to conduct a search reasonably calculated to uncover all relevant agency records. 5 U.S.C. §§552(a)(3)(C-D).  In addition to the description in the FOIA request, an agency must use its own knowledge to consider leads and

other positive indications identified during the search that suggest other records might be located outside the scope of its original search.  Federal courts measure FOIA compliance by the information known to the agency at the completion of the agency search(es).

68.     In limited circumstances, responsive records may be deemed exempt from FOIA's broad disclosure mandate, so long as the information fits within nine categories of exemptions. 5 U.S.C. § 552(b).  These exemptions are narrowly construed in light of FOIA's dominant objective of disclosure.

69.     Under FOIA, federal agencies bear the burden of proving that withholding of information in responsive agency records is proper. 5 U.S.C. § 552(a)(4)(B).

70.     FOIA imposes statutory duties upon agencies to "ensure that the Government remains open and accessible to the American people and is always based not upon the 'need to know' but upon the fundamental 'right to know.'" Pub. L. No. 110-175, 121 Stat. 2524, Section 2 ¶ 6 (2007).  Judicial interpretations and applications of FOIA that limit public access must be applied sparingly due to a series of Congressional actions taken to increase public access. Id.

71.     In 2016, Congress enacted the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016).  Like previous enactments, the 2016 legislation implemented several changes to FOIA that were designed to increase public access to government records. H.R. REP. NO. 391, 114th Cong., 2d Sess. 1, 7-8 (2016); S. REP. NO. 4, 114th Cong., 1st Sess. 2-5 (2015).

72.     The FOIA Improvement Act addresses Congressional "concerns that some agencies [were] overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure." S. REP. NO. 4, 114th Cong., 1st Sess. 2 (2015); see also H.R. REP. NO. 391, 114th Cong., 2d Sess. 9 (2016) ("[T]here is concern that

agencies are overusing these exemptions to protect records that should be releasable
under the law.").

73.     In 2016, Congress responded to concerns that agencies overuse these exemptions by
imposing upon all agencies an additional, independent, and meaningful burden that
now requires an agency showing of foreseeable harm that connects the information in
withheld records to a harm recognized by the purposes of the specific Exemption. 5
U.S.C. § 552(a)(8)(A)(i)(I).  The foreseeable harm requirement applies to all nine
FOIA Exemptions. 5 U.S.C. § 552(b).

74.     FOIA requires that agencies release reasonably segregable portions of requested
records that are not lawfully exempt. 5 U.S.C. § 552(b)(9).

75.     Administrative remedies are deemed exhausted whenever an agency fails to comply
with the applicable time limits of FOIA. 5 U.S.C. § 552(a)(6)(C)(i).  As noted above,
GSCA timely filed administrative appeals of BLM's FOIA violations in response to
GSCA's 2018, 2019, and 2022 FOIA requests.  BLM/DOI did not respond to any of
the administrative appeals within FOIA's twenty-workday deadline.  GSCA now
turns to this Court to provide relief that ensures GSCA, its membership, and the
public have prompt public access to agency records guaranteed by FOIA. 5 U.S.C. §
552(a)(6).

76.     FOIA is violated whenever an agency withholds an agency record, whether through
delay, inadequate search, or redacting information, when the information in the
responsive agency record is not subject to a recognized FOIA Exemption. 5 U.S.C. §
552(b).  An agency's failure to comply with FOIA deadlines withholds records,
exhausts all administrative remedies, and puts all questions of FOIA compliance
within the jurisdiction of the federal courts.

77.     FOIA litigation is normally resolved on summary judgment, with the burden of

proving FOIA compliance falling on the agency.  During this litigation, the

government must carry its burden of demonstrating all elements of FOIA compliance.

### BLM'S REPEATED AND ONGOING FOIA VIOLATIONS IN THIS CASE

78.     Due to the community's critical need to review the agency records regarding RMI's

mining, processing and sale of limestone for common variety purposes, on June 12,

2018, GSCA submitted a FOIA request to BLM requesting agency records regarding

the Mine ("2018 FOIA").  BLM docketed that request as

FOIA CO-18-063, 1278 (CO-951), BLM-2018-00936/CO-18-063.  In a series of six

installments, BLM produced some agency records, but withheld or blacked-out

hundreds of pages of the requested agency records.

79.     BLM's final installment letter in response to the 2018 FOIA, dated February 24, 2020

stated that:

> The Colorado State Office, the Colorado River Valley Field Office and the
> Northwest District Office conducted a search of their files and located
> approximately 1,006 pages responsive to your request. We reasonably foresee that
> disclosure would harm an interest protected by one or more of the nine exemptions
> to the FOIA's general rule of disclosure, therefore we are withholding, 149 pages
> in part and 212 pages in full pursuant to Exemptions 3, 5 and 6 of the FOIA [5
> U.S.C. § 552 (b)(3), (b)(5), and (b)(6)].

80.     GSCA submitted another FOIA request, on November 8, 2019 ("2019 FOIA"), to

obtain all agency records related to the Mine that were generated after the 2018

FOIA.  BLM docketed that request as FOIA CO-20-007; CO-20-009, 1278 (CO-951),

BLM-2020-00223/CO-20-007/CO-20-009.

81.     In a series of four installments, and as with the 2018 FOIA, BLM produced some

agency records, but withheld or blacked-out hundreds of pages of the agency records

that are responsive to the 2019 FOIA.

82.     The third (Oct. 26, 2020) installment response stated that "the search located approximately 3,044 pages responsive to your request.  We foresee that disclosure would harm an interest protected by one or more of the nine exemptions to the FOIA's general rule of disclosure, therefore we are withholding  841 pages in part and 122 pages in full pursuant to Exemptions 4, 5 and 6 of the FOIA [5 U.S.C. §  552 (b)(4), (b)(5), and (b)(6)."

83.     BLM's final installment letter dated April 22, 2021 stated that:

> The Colorado State Office, the Colorado River Valley Field Office and the Northwest District  Office conducted a search of their files and located approximately 3,769 pages responsive to  your request. We reasonably foresee that disclosure would harm an interest protected by one  or more of the nine exemptions to the FOIA's general rule of disclosure, therefore we are withholding, 239 pages in part and 10 pages in full pursuant to Exemptions 4 and 5 of the  FOIA [5 U.S.C. § 552 (b)(4), and (b)(5)].

84.     Due to BLM's decision to withhold information in agency records that are responsive to GSCA's 2018 and 2019 FOIA requests, GSCA submitted two formal administrative appeals to the Interior Department in Washington, D.C.: (1) on July 2, 2021 (regarding GSCA's November 8, 2019 FOIA request); and (2) on May 21, 2020 (regarding GSCA's June 12, 2018 FOIA request).  As of the date of this filing, GSCA has yet to receive a decision on either appeal.

85.     In addition to the 2018 and 2019 FOIA requests, in an effort to keep the public informed about the ongoing Mine operations, GSCA submitted a third FOIA request, on November 2, 2022 ("2022 FOIA").  BLM docketed this FOIA request as: FOIA C0-23-004, 1278 (C0-951); BLM-2023-000612.

86.     In the 2022 FOIA, GSCA requested essentially the same agency records that were created or obtained since the 2019 FOIA was submitted, including RMI's sales invoices and related reports, which BLM had previously provided to GSCA in an unredacted form.

87.    In addition, GSCA requested agency records related to the September 25, 2019, Escrow Account Agreement, including all records submitted by RMI to BLM pursuant to that Agreement, and all BLM communications with RMI regarding that Agreement and its implementation.  Each document RMI submits to BLM becomes an agency record subject to FOIA at the moment it is obtained by BLM.

88.    BLM responded to the 2022 FOIA in a series of letters, producing some agency records in its responses of July 19, 2023, August 28, 2023, and the final response of September 18, 2023.  BLM's final installment letter of September 18, 2023, stated that:

> The Colorado State Office and the Colorado River Valley Field Office conducted a search of their files. The search located approximately 3,218 pages responsive to your request.  We foresee that disclosure would harm an interest protected by one or more of the nine exemptions to the FOIA's general rule of disclosure; therefore, we are withholding 718 pages in part and 331 pages in full pursuant to Exemptions 3, 4, 5 and 6 of the FOIA [5 U .S.C. § 552 (b)(3), (b)(4), (b)(5), and (b)(6)].

89.    Due to BLM's failure to provide the requested agency records in response to GSCA's 2022 FOIA, GSCA submitted a formal administrative appeal to the Interior Department in Washington, D.C. on December 27, 2023.  As with the other outstanding appeals, GSCA has yet to receive a decision on this appeal.

90.    For their responses to the 2018, 2019, and 2022 FOIA requests, Defendants failed to provide any information that would assure GSCA and the public that the asserted exemptions were supported by the content of the agency records or the agency efforts, if any, to maintain confidentiality.  FOIA imposes on agencies the burden of establishing facts and circumstances establishing that information withheld by the agency is exempt from release. 5 U.S.C. § 552(a)(4)(B).

91.    The BLM response letters do not provide a sufficient basis to support the exemptions and withholdings.  Instead, the BLM's letters merely parrot statutory language to justify withholdings. Anderson v. Health & Human Servs., 907 F.2d 936, 940 (10th

Cir. 1990). Maintaining a privilege log or a *Vaughn* index "listing each of the withheld documents" that explains the withholding for each document or portion thereof would provide contemporaneous support for each BLM decision to assert a FOIA exemption. Id. Defendants have failed to "set[] forth a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." Wiener v. FBI, 943 F.2d 972, 977 (9th Cir. 1991) (citing Vaughn v. Rosen, 484 F.2d 820, 823-25 (D.C. Cir. 1973)), *cert. denied*, 505 U.S. 1212 (1992). *See also* Animal Legal Defense Fund v. Department of the Air Force, 44 F. Supp. 2d 295, 300 (D.D.C. 1999) (quoting King v. Department of Justice, 830 F.2d 210, 224 (D.C. Cir. 1987)).

92.     GSCA's appeals of BLM's FOIA violations responding to the 2018, 2019, and 2022 FOIA requests raised similar issues regarding BLM's FOIA violations. By failing to adjudicate the administrative appeals, DOI's FOIA violations now include: the failure to demonstrate whether BLM/DOI conducted an adequate search for the requested agency records, the failure to justify withholding decisions via justification in a privilege log, *Vaughn* index, or similar document, and failure to justify BLM's determination not to provide those portions of documents that were reasonably segregable for the extensive assertions of various FOIA exemptions used to fully withhold or heavily redact the agency records that were produced. Defendants' unmet FOIA burdens and duties must now be met in accordance with standards and procedures applied during litigation.

93.     GSCA challenges BLM's FOIA violations regarding all three of these FOIA requests, as noted herein.

**BLM's Failure to Support the Exemption 4 Withholdings and/or Redactions.**

94.     However, the following discussion regarding BLM's FOIA violations responding to the 2022 FOIA are especially arbitrary and capricious, considering that BLM had

previously provided, without redaction, essentially the same documents – especially
the sales invoices, receipts, and spreadsheets regarding RMI's mineral sales from the
Mine.

95.     The decisions regarding the 2022 FOIA appear to be part of an agency policy or
practice designed to shield BLM's federal public land management duties from
GSCA, the public, and government officials with an interest in unlawfully permitted
mining of these federal public lands.  Such practices and policies are properly
remedied by the federal courts. *See* Colo. Wild Pub. Lands v. U.S. Forest Serv.,
___F.Supp.3d. ___, 2023 U.S. Dist. LEXIS 160540, at *38 (D.D.C. Sep. 11, 2023)
(granting declaratory judgment on well-plead pattern/policy claim).

96.     Under FOIA, BLM may avoid disclosure only if it proves that the requested
documents fall within one of the nine enumerated exemptions to the general
disclosure requirement. 5 U.S.C. § 552(b)(1)-(9).  The FOIA thus establishes a
statutory right of access by any person to federal agency records.  Consistent with
encouraging disclosure, the exemptions under § 552(b) are discretionary, not
mandatory.

97.     The agency bears the burden of justifying nondisclosure.  FOIA's Exemption 4
permits federal agencies to withhold "trade secrets and commercial or financial
information obtained from a person [that is] privileged or confidential." 5 U.S.C. §
552(b)(4).  To show that this exemption shelters the information withheld, the agency
must show that it is (1) commercial or financial, (2) obtained from a person, and (3)
privileged or confidential.  The agency must also show a foreseeable harm that
connects the information in withheld records to a harm recognized by the purposes of
the specific exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I).

98.     In its responses to GSCA's 2020 FOIA, BLM provided no details to support the
large-scale withholding of records, or portions thereof, under Exemption 4.

99.     The most glaring error involves records related to the September 25, 2019, Escrow
        Account Agreement, including all records submitted by RMI to BLM pursuant to that
        Agreement, and all BLM communications with RMI regarding that Agreement and its
        implementation.

100.    For example, BLM completely exempted information regarding RMI's submittal of
        the invoices/reports and related information regarding RMI's sales of rock from the
        Mine, despite the fact that BLM had provided to GSCA the same information,
        without redaction, in response to the 2018 and 2019 FOIA requests.

101.    This information regarding RMI's operations on federal public land is neither
        "commercial" nor "confidential," as these terms are used in FOIA.

102.    As a result, neither GSCA nor the public have any idea as to whether, and how, RMI
        is complying with the terms of the binding Escrow Agreement, which is required to
        assess whether BLM is complying with federal mining and public land laws in its
        regulation of the Mine.  Information required to show compliance with mining laws,
        particularly those involving federal public lands, is regularly and customarily
        provided to BLM, and other local, state, and federal agencies, without redaction.

103.    Further, due to BLM's withholding of this information, the public cannot determine
        whether the company is complying with its current (1982/89) mine plan approval,
        which limits sales of material from the Mine to only minerals that qualify as
        "locatable" under the 1872 Mining Law and 1955 Common Varieties Act.

104.    In contrast, in response to GSCA's 2018 and 2019 FOIA requests for those same
        records/documents, BLM provided RMR/RMI's Sales Reports/Receipts and
        spreadsheets from late 2016 to mid-2018, showing the purchaser, tonnage, type of
        material, price, and other information now withheld by BLM. *See, e.g.,* RMR
        Aggregates, Sales by Customer, October 2017 (attached to GSCA's December 27,
        2023 FOIA appeal).  GSCA also attached to its most recent appeal additional

22

RMR/RMI Sales Reports/Receipts for various months provided by BLM via the 2018
and 2019 FOIAs.

105.     BLM also previously provided to GSCA under FOIA detailed lists and information
regarding each RMI Mine sale, including the date, purchaser, products sold, quantity,
cost and overall value. *See* "RMR Mid-Continent Quarry Monthly Tons and Escrow
Value," for various months between September 2019 and February 2020 (attached to
GSCA appeal).

106.     Yet since March 2020, BLM has withheld all (with no reasonable segregation) of this
information – with no justification, outside of a bare invocation of Exemption 4.  For
example, in BLM's response to GSCA's 2022 FOIA request, all of the information
regarding the materials produced from the federal public lands at the Mine site is
completely blacked-out and withheld from disclosure. *See, e.g.,* "RMR Mid-
Continent Quarry Monthly Tons and Escrow Value," included with series of
BLM/DOI emails in June, 2021 (attached to GSCA appeal).  This is the **exact same**
spreadsheet and information that BLM had previously produced, without any
withholding, in response to GSCA's previous FOIA requests as discussed and shown
above.

107.     RMI/RMR customarily provides much of this information to the public through a
variety of common industry practices.  Examples of such documents include the
"2018 Rocky Mountain Resources – Mid Continent Quarry Price Sheet," showing
that RMR was/is producing, and selling, the following materials from the site: "Road
Base," "Structural Fill," "Rip Rap," "Screened Rock," and various types of
"Boulders."

108.     Further, in August 2022, RMI distributed to local construction firms and the public a
Sales Flyer, entitled "Mid-Continent Quary, August [2022] Focus: Rip Rap Product
Offering," identifying the types of rocks/materials offered for sale (attached to

appeal) (listing "Road Base," "Crushed Rock," "Rip Rap," "Structural Fill," and "Boulders") (attached to GSCA appeal).

109.     At a minimum, this shows that RMI/RMR has a customary and routine practice of identifying the types of rocks/materials produced and sold at the Mine and subject to the Escrow Agreement – information BLM now asserts is "confidential" and cannot be disclosed under Exemption 4.

110.     BLM's determination to withhold information pursuant to Exemption 4 did not address RMI's practices, industry customs, or otherwise make any inquiry regarding harms to an Exemption 4 interest.

111.     RMI is removing and selling rock and stone from the Mine for common variety construction uses.  In January 2020, RMI stated in its court filings against Garfield County, that RMI has been selling the rock from the Quarry for local construction projects.  RMI acknowledged that "rocks purchased from RMR" have been "used in the reconstruction of the City's Grand Avenue Bridge." RMI Response in Opposition to City's Motion to Intervene, Case Number: 2019CV30087, at p. 2 (January 27, 2020).  RMI boasted that the Bridge "may not have been possible but for the availability of material purchased from RMR by City contractors within 2 miles of the project site."

112.     Regarding the purchasers of these sales, now completely withheld by BLM under Exemption 4 with no explanation, RMI previously and voluntarily released their names to the public – precluding BLM's new invocation of Exemption 4 for this information.

113.     RMI customarily discloses the withheld information in its 10-K Report to the federal Securities and Exchange Commission, including in the report issued for the fiscal year that ended March 31, 2019: "The operation currently serves Arch Coal, Hickman

Farms, local construction firms, and various city and county government construction

projects."

114.     RMI's most recent 10-K report, for the fiscal year ending on March 31, 2023,

similarly states that: "The operation currently serves Arch Resources, local

construction firms, and various city and county government construction projects."

115.     BLM's refusal since March 2020 to produce any of the requested sales and related

reports, as it previously had done, is a change in policy/practice that was not

explained by BLM, and is not justified under Exemption 4.  BLM/DOI must now

meet its FOIA burden to justify Exemption 4 withholdings pursuant to the procedures

and evidentiary standards applied during judicial review.

**Exemption 5 Withholdings/Redactions Not Supported.**

116.     As detailed above, in response to GSCA's 2018, 2019, and 2022 FOIA requests,

BLM asserts that it was justified in withholding large portions of the requested and

produced documents pursuant to the "deliberative process" privilege of Exemption 5.

5 U.S.C. § 552(b)(5).

117.     Exemption 5 of FOIA provides a limited and qualified exemption from the Act's

disclosure requirement for "inter-agency or intra-agency memorandums or letters

which would not be available by law to a party other than an agency in litigation with

the agency." 5 U.S.C. § 552(b)(5).

118.     As with the other exemptions, the agency bears the burden of proof to show that the

records in question are exempt from its duty to disclose.  The agency must also show

a foreseeable harm that connects the information in withheld records to a harm

recognized by the purposes of the specific exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I).

119.     Also, much like other litigation-based privileges contained within Exemption 5, the

deliberative process privilege is "a qualified one." F.T.C. v. Warner Comms' Inc.,

742 F.2d 1156, 1161 (9th Cir. 1984).  This means that the requester may still "obtain

deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." Id.

120.   To meet its burden, BLM must, but has not, show that the redacted or withheld information was not protected and otherwise treated in a manner that qualifies for the protections afforded truly confidential information.  Under FOIA, any information, records, or portions thereof that were provided to an outside (non-agency) entity, such as RMI, is not subject to Exemption 5 and thus must be released.

121.   BLM provided little, if any, information to support its generalized invocation of Exemption 5 and provides insufficient basis to analyze the assertion of privilege and the propriety of the withholding.  Defendants must now meet their FOIA burden to justify Exemption 5 withholdings pursuant to the procedures and evidentiary standards applied during judicial review.

**Exemption 3 Withholdings/Redactions Not Supported.**

122.   In response to each of the three GSCA FOIA requests, BLM withheld and/or redacted agency records pursuant to FOIA Exemption 3 without any indication of the basis for the withholding.  BLM alleges that "The Procurement Integrity Act" prohibits any release, but no details are provided, as required by FOIA.

123.   BLM/DOI must now meet its FOIA burden to justify Exemption 3 withholdings pursuant to the procedures and evidentiary standards applied during judicial review. 5 U.S.C. 552(b)(3).  The agency must also show a foreseeable harm that connects the information in withheld records to a harm recognized by the purposes of the specific exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I).

**Exemption 6 Withholdings/Redactions Not Supported.**

124.   In response to each of the three GSCA FOIA requests, BLM withheld and/or documents pursuant to FOIA Exemption 6 without any indication of the validity of this withholding.

125.    In order for BLM to withhold records under the auspices of Exemption 6, it must first confirm that the information sought constitutes personnel, medical, or similar files under Exemption 6. 5 U.S. C. 552(b)(6).  The agency must also show a foreseeable harm that connects the information in withheld records to a harm recognized by the purposes of the specific exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I).

126.    BLM has not met its Exemption 6 burden.  The agency provides no description of the information at issue, whether it relates to RMI, employees of the company, or otherwise.  Nor does BLM explain whether the records at issue were withheld in whole or in part – thereby failing to demonstrate that it has disclosed all "reasonably segregable" information as required by FOIA.  This type of vague and conclusory analysis violates FOIA.

127.    As a result, Exemption 6 does not apply to this information. BLM/DOI must now meet its FOIA burden to justify Exemption 6 withholdings pursuant to the procedures and evidentiary standards applied during judicial review.

**Failure to Disclose "Reasonably Segregable" Portions of Records.**

128.    Even if BLM could prove that the withheld or redacted documents are exempt under FOIA, only those specific portions of the document(s) that are legally exempt under an applicable exemption can be withheld. 5 U.S.C. § 552(b).

129.    Defendants have failed to show that they have provided all reasonably segregable portions of withheld or partially withheld, agency records, in violation of FOIA.

130.    For example, BLM withheld "331 pages in full" pursuant to its Sept. 18, 2023 letter and identified no effort to release "reasonably segregable portions" not protected from disclosure.  Similarly, BLM responses to GSCA's 2018 and 2019 FOIA requests noted hundreds of pages withheld "in full," without the reasonable segregation of portions under FOIA.

131.    Thus, the BLM's actions violated FOIA and cannot be sustained.

**Inadequate Search.**

132.    FOIA requires that agencies use reasonable means to design and conduct a search designed to identify all responsive agency records.

133.    Each FOIA response in this case contained a generic response stating that the Colorado State Office and the Colorado River Valley Field Office conducted a search of their files.  No information was provided about who searched, which files were searched, what timeframe was used for this search, or any other details needed to establish the methods used to conduct the search.  This scant information prevents GSCA and the public from determining the reasonableness of this search for records.

134.    The consequence of Defendants' refusal to provide information regarding the search during the administrative phase is that the agency must now meet its burden based on FOIA's de novo judicial review provision. 5 U.S.C. § 552(a)(6)(C)(i).

135.    In addition, by apparently limiting its searches to just the Colorado BLM offices, Defendants failed to conduct a proper search of BLM and Interior Department offices in Washington, D.C.

136.    In this case, during the time when the Colorado BLM offices were conducting their searches, the national BLM office as well as the officials with the Interior Department headquarters were informed about the Mid-Continent Mine issues.

137.    As such, because these office(s) "has or is likely to have responsive documents," the BLM was required to conduct a thorough search of these offices for any responsive records. *See* Rocky Mountain Wild v. BLM, 455 F.Supp.3d 1005, 1024 (D. Colo. 2020) ("an agency must forward a FOIA request to another office if the agency knows that office 'has or is likely to have responsive documents.'") (citations omitted).  Here, Defendants failed to conduct a proper and adequate FOIA search and provide responsive records.

**FIRST CLAIM FOR RELIEF**
**Failure to Provide Prompt Access to Agency Records Requested Under FOIA**

138.    GSCA realleges and incorporates by reference all allegations in all paragraphs of this
Complaint.

139.    Defendants BLM and DOI are each an "agency" subject to FOIA (5 U.S.C. § 552(a)),
and therefore must make reasonable efforts to comply with all FOIA duties and
provide prompt access to requested records upon a written request. 5 U.S.C. §
552(f)(1).

140.    In its 2018, 2019, and 2022 FOIA requests, GSCA properly submitted written
requests for agency records within the possession, custody, and control of
Defendants.

141.    In their responses to the 2018, 2019, and 2022 FOIA requests, Defendants failed to
produce the requested records and documents, and failed to adequately justify and
describe the withholdings, redactions, and claimed exemptions, in violation of FOIA.

142.    Defendants have failed to provide a lawful basis for withholding and/or redacting the
documents, records, and information in response to the 2018, 2019, and 2022 FOIA
requests.

**SECOND CLAIM FOR RELIEF**
**Failure to Justify Reliance on FOIA Exemptions, and Illegal Use of Exemptions
to Withhold and/or Redact Requested Documents**

143.    GSCA realleges and incorporates by reference all allegations in all paragraphs of this
Complaint.

144.    Defendants have not, and cannot, establish through admissible evidence that the
withheld documents or portions thereof fall within one of the nine enumerated
exemptions to the general disclosure requirement. 5 U.S.C. § 552(b)(1)-(9).

145.    Defendants have not, and cannot, establish through admissible evidence, a foreseeable harm that connects the information in withheld records to a harm recognized by the purposes of the specific exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I).

146.    Defendants have failed to provide a lawful basis for withholding and/or redacting the documents, records, and information in response to the 2018, 2019, and 2022 FOIA requests.

**THIRD CLAIM FOR RELIEF**
**Failure to Conduct an Adequate Search Under FOIA**

147.    GSCA realleges and incorporates by reference all allegations in all paragraphs of this Complaint.

148.    Defendants failed to conduct a reasonable and adequate search under FOIA for the requested documents. 5 U.S.C. §§ 552(a)(3)(B)-(C).

149.    Defendants have failed to provide a lawful basis for withholding and/or redacting the documents, records, and information in response to the 2018, 2019, and 2022 FOIA requests.

**FOURTH CLAIM FOR RELIEF**
**Failure to Provide All Reasonably Segregable Portions of the Withheld or Redacted Documents**

150.    GSCA realleges and incorporates by reference all allegations in all paragraphs of this Complaint.

151.    Defendants failed to release reasonably segregable portions of requested records that are not lawfully exempt. 5 U.S.C. § 552(b)(1-9); 5 U.S.C. § 552(a)(8)(A).

152.    Defendants have failed to provide a lawful basis for withholding and/or redacting the documents, records, and information in response to the 2018, 2019, and 2022 FOIA requests.

## FIFTH CLAIM FOR RELIEF

**Agency Records Unlawfully withheld Pursuant to Agency Policies and Practices**

153.     GSCA realleges and incorporates by reference all allegations in all paragraphs of this

Complaint.

154.     Defendants have adopted formal and/or informal policies and practices that were used

to unlawfully withhold agency records responsive to GSCA's FOIA requests.

155.     Defendants will continue to use these policies and practices to unlawfully withhold

agency records if not remedied by declaratory, injunctive, and/or statutory relief.

## REQUEST FOR RELIEF

FOR THESE REASONS, GSCA respectfully requests that this Court enter judgment

providing the following relief:

a.   Enter Findings and Declare that Defendants violated FOIA by unlawfully

withholding agency records responsive to GSCA's 2018, 2019, and 2022 FOIA

Requests;

b.   Direct by order and injunction that Defendants conduct a lawful search for

all responsive records to GSCA's 2018, 2019, and 2022 FOIA Requests;

c.   Direct by order and injunction that Defendants promptly provide all

agency records responsive to GSCA's 2018, 2019, and 2022 FOIA Requests,

excepting only those (or portions thereof) that Defendants have shown are exempted

from disclosure pursuant to one of the nine recognized FOIA exemptions, as found by

this Court in this case;

d.   Direct by order and injunction that Defendants provide GSCA with a

detailed statement justifying each withholding of an agency record, or portions

thereof, in accordance with the indexing requirements of <u>Vaughn v. Rosen</u>, 484 F.2d

820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974);

      e.   Grant GSCA's costs of litigation, including reasonable attorney fees, as

provided by FOIA, 5 U.S.C. § 552(a)(4)(E); and

      f.   Provide such other statutory or equitable relief as this Court deems just

and proper.

RESPECTFULLY SUBMITTED February 15, 2024.

*/s/ Roger Flynn*
Roger Flynn (Colo. Bar # 21078)
*/s/ Jeffery C. Parsons*
Jeffery C. Parsons (Colo. Bar # 30210)
WESTERN MINING ACTION PROJECT
P.O. Box 349, 440 Main St., #2
Lyons, CO 80540
(303) 823-5738
roger@wmaplaw.org
jeff@wmaplaw.org


*/s/ Travis E. Stills*
Travis E. Stills (Colorado Bar # 27509)
ENERGY & CONSERVATION LAW
227 E. 14th St., #201
Durango, Colorado 81301
(970) 375-9231
stills@eclawoffice.org

*Attorneys for Plaintiff Glenwood Springs Citizens' Alliance*

Address of Plaintiff:

Glenwood Springs Citizens' Alliance
PO Box 2471
Glenwood Springs, CO 81602